**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| JACQUELINE WILSON, |
| Plaintiff, |
| v. |
| JAY CLAYTON,[1] Chair of the Securities and Exchange Commission, |
| Defendant. |

Case No. 16-cv-00133 (CRC)

**MEMORANDUM OPINION AND ORDER**

Securities and Exchange Commission ("SEC") employee Jacqueline Wilson has sued the agency on various claims of discrimination and retaliation. The SEC moves to dismiss most of Wilson's claims for failure to timely exhaust her administrative remedies. For reasons discussed below, the Court will treat the motion as one for partial summary judgment and will grant it in part and deny it in part.

**I. Background**

Jacqueline Wilson, an African-American woman in her fifties, began working at the SEC in 2008 as an SK-17[2] Supervisory Auditor in the Office of Inspector General ("OIG"). Compl. ¶¶ 4, 6, 35. In 2013, Carl Hoeker was appointed as the SEC's Inspector General and began serving as Wilson's supervisor. Def.'s Mot. to Dismiss ("Mot. to Dismiss"), Ex. A at 3. In November 2013, Wilson contacted an agency equal employment opportunity ("EEO") counselor

---

[1] Wilson's complaint names former SEC Chair Mary Jo White as the Defendant. The Court has substituted the current Chair, Jay Clayton, pursuant to Federal Rule of Civil Procedure 25(d).

[2] The SEC uses an "SK" pay schedule rather than the "GS" schedule used elsewhere in the federal civil service.

to complain that Hoeker and another supervisor were subjecting her to a hostile work environment on the basis of age, race, sex, and in retaliation for giving testimony in an unrelated agency investigation. Mot. to Dismiss, Ex. E at 1-2. At the conclusion of the counseling process, Wilson was notified of her right to file a formal EEO complaint with the agency, Def.'s Reply ("Reply"), Ex. D at 20, but she declined to do so. Instead, she requested a transfer and was temporarily detailed from OIG to the agency's Office of Human Resources ("OHR"). Id. at 19. After several extensions of her detail, Wilson was permanently transferred to OHR in November 2014. Id.

Wilson again contacted an agency EEO counselor the following month. Mot. to Dismiss, Ex. D at 19. This time, however, Wilson proceeded to timely file a formal complaint on February 23, 2015, checking boxes on the complaint form for "Promotion/Non Selection," "Assignments/Duties," "Reassignment," "Transfer," and "Evaluation/Appraisal." Pl.'s Opposition Mot. to Dismiss ("Opp."), Ex. 1 at 3. Although Wilson had requested the detail to OHR and appears to have agreed to at least one of its extensions, her formal complaint alleged that the permanent transfer to OHR was involuntary and that she was assigned a "less equivalent position." Id. at 5. She further claimed that Hoeker pushed her out of OIG by creating a new SK-17 position nearly identical to Wilson's and filling it with a younger, white woman, Rebecca Sharek. Id. In a supporting affidavit, Wilson also maintained that Sharek was paid significantly more than her while occupying the same position at OIG. Mot. to Dismiss, Ex. A at 7-8.

Upon receiving Wilson's formal complaint, the SEC's Office for Equal Employment Opportunity accepted the following claim for investigation: "Whether the SEC discriminated against Wilson . . . when on November 16, 2014, [she] was involuntarily transferred from OIG to OHR." Reply, Ex. D at 3. The EEO office issued a Final Agency Decision on October 29, 2016.

Mot. to Dismiss, Ex. D. The decision concluded that Wilson failed to prove by a preponderance of the evidence that the alleged adverse employment action—her permanent reassignment to OHR—was the result of unlawful employment discrimination. Id. at 18.

Ninety days after receiving a right-to-sue notice following the agency's investigation, Wilson filed suit in this Court. Her complaint contains three counts: (1) race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) retaliation, also in violation of Title VII; and (3) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). The SEC has filed a partial motion to dismiss for failure to exhaust administrative remedies with respect to all of the discrete acts of discrimination that Wilson contends support the three counts, except her permanent reassignment to OHR.

## II. Standard of Review

The SEC has moved to dismiss under Rule 12(b)(6). However, where, as here, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); see also Center for Auto Safety v. Nat'l Highway Transp. Safety Admin., 452 F.3d 798, 805 (D.C. Cir. 2006). Such treatment is appropriate if the parties are "given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Wilson has been accorded a reasonable opportunity to respond to and present evidence: the exhibits to Defendant's motion were available to Wilson, and Wilson's opposition included its own set of supporting exhibits.

Summary judgment is appropriately granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, the Court must

"'examine the facts in the record and all reasonable inferences derived therefrom in a light most favorable to' the nonmoving party." Robinson v. Pezzat, 818 F.3d 1, 8 (D.C. Cir. 2016) (citation omitted).

### III. Analysis

Each of the three counts of Wilson's complaint—race and sex discrimination under Title VII, retaliation under Title VII, and age discrimination under the ADEA—is supported by the same six discrete acts of alleged discriminatory and/or retaliatory treatment: (1) that Wilson experienced workplace harassment during her tenure at OIG, (2) that the agency selected Ms. Sharek over her for the position of Deputy Inspector of Audits in OIG, (3) that she received a poor performance evaluation in January 2014, (4) that the agency extended her detail to OHR, (5) that she was permanently reassigned to OHR, and (6) that she was paid less than colleagues who were younger, white, and male. See Compl. ¶¶ 6-36. Wilson argues that even if a claim based on one or more of these discrete acts is time barred, they all comprise a continuing "hostile work environment" claim that is not time barred. Opp. 4-6. Finally, Wilson contends that claims based on each of these discrete acts are timely because they are "reasonably related" to at least one exhausted claim. Id. at 7.

#### A. The Discrete Acts Underlying Wilson's Claims

Federal law protects employees from discrimination on the basis of their race, sex, and age. See 42 U.S.C. § 2000e-2 (race and sex); 29 U.S.C. § 633a (age). However, if a federal employee wishes to bring suit against her employer alleging a violation of her rights, she must first "navigate a maze of administrative processes" to timely exhaust each discrete act alleged. Niskey v. Kelly, 859 F.3d 1, 5 (D.C. Cir. 2017).

First, an aggrieved party must consult with the agency's EEO Counselor within 45 days of the allegedly discriminatory incident. 29 C.F.R. § 1614.105(a). At this initial session, the EEO Counselor informs the employee of her rights and responsibilities. Id. § 1614.105(b)(1). If the informal counseling process proves unsuccessful, the EEO Counselor must inform the employee of her right to file a complaint with the agency. Id. § 1614.105(d). The employee must file her formal agency complaint within 15 days of receiving such notice. Id. § 1614.106(b). The agency then has 180 days to complete an investigation of the complaint. Id. § 1614.108(e). Upon receiving a final agency decision, the employee may either appeal to the Equal Employment Opportunity Commission ("EEOC") within 30 days or file suit in federal court within 90 days. Id. §§ 1614.402(a), 1614.407(a). If an aggrieved party fails to comply with this timeline, the discrete discriminatory act is "not actionable." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 (2002).

Wilson's complaint includes allegations concerning events that occurred prior to January 2014, when she still worked at OIG, and events that took place in connection with her detail and eventual transfer to OHR. Although Wilson complained to an EEO counselor in November 2013 about her treatment while working at OIG, she did not subsequently file a formal agency complaint and thus abandoned those claims. See 29 C.F.R § 1614.106(b). The remaining question before the Court is which claims were timely exhausted by Ms. Wilson's second foray into the administrative process, which she initiated by again contacting an EEO counselor in December 2014 after her permanent transfer to OHR.

1. Workplace Harassment in OIG

Wilson alleges numerous incidents of workplace harassment while working at OIG from February 2013 (when Mr. Hoeker became her supervisor) until January 2014 (when she was

5

detailed to OHR). Compl. ¶¶ 9-30. As noted above, however, Wilson chose not to file a formal complaint after raising these same allegations with an EEO counselor in November 2013. And Wilson's second contact with an EEO counselor was not until December 2014, well past the 45-day deadline for initiating the informal counseling process with respect to any conduct that occurred during her time at OIG. See 29 C.F.R. § 1614.105(a). Additionally, Wilson did not check the box for "harassment" on her formal complaint, nor did the agency accept that issue for investigation. Mot. to Dismiss, Ex. D; Opp. Ex. 1 at 3. Wilson therefore failed to exhaust her workplace harassment claim.

2. Non-Selection for Deputy Inspector Position

Wilson checked off "non-selection" on her formal agency complaint, presumably in reference to OIG's decision in January 2014 to hire Rebecca Sharek as Deputy Inspector General for Audit. See Compl. ¶ 29; Opp., Ex. 1. But because the decision to hire Ms. Sharek took place almost a year before Wilson contacted an agency EEO counselor in December 2014, Compl. ¶ 29, Mot. to Dismiss, Ex. D at 19, any claim based on the non selection is time barred. 29 C.F.R. § 1614.105(a).

Nevertheless, even time-barred claims may be allowed to proceed if the agency decided them on the merits. See Doak v. Johnson, 798 F.3d 1096, 1104–05 (D.C. Cir. 2015) (finding that an agency can waive the deadline for contacting an EEO counselor if it accepts, investigates, and decides a claim on the merits). Wilson contends that her non-selection claim was exhausted because the agency "addressed" and "made legal conclusions" about it in its final agency decision. Opp. at 8. But to the extent the decision did so, it was only in the context of deciding whether Wilson had established a prima facie case of discrimination with respect to her *permanent reassignment* claim, which again was the only claim accepted for investigation. Mot.

6

to Dismiss, Ex. D at 9-10 (finding that Sharek's relative pay did not establish the disparate-treatment prong of prima facie discrimination because she and Wilson had different job responsibilities). Nowhere does the final agency decision discuss, let alone resolve, Wilson's claim that the agency engaged in unlawful discrimination by hiring Sharek over her for the Deputy Inspector position. Wilson's non-selection claim must therefore be dismissed.

3. Performance Evaluation

Wilson checked off "evaluation/appraisal" on her formal complaint, presumably in reference to a negative performance evaluation she received in January 2014. Opp., Ex. 1 at 3; Compl. ¶ 30. But because the performance evaluation is a discrete act that occurred more than 45 days before Wilson complained to an EEO counselor in December 2014, the claim is time barred.

4. Detail Extensions

Wilson's complaint alleges that her detail to OHR "was extended three times." Compl. ¶ 33. However, the last extension occurred on October 19, 2014, more than 45 days before Wilson contacted an EEO counselor on December 22, 2014. Mot. to Dismiss at 9; see 29 C.F.R. § 1614.105(a). The final agency decision mentions the detail extensions in the context of Wilson's permanent reassignment claim by noting that their voluntary nature tends to prove that the permanent reassignment was not an adverse employment action. Mot. to Dismiss, Ex. D at 7. But the decision does not analyze the detail extensions as a separate discrimination claim, nor does it resolve that issue on the merits. The claim is therefore not exhausted.

5. Permanent Transfer

Wilson's permanent transfer to OHR occurred on November 16, 2014, less than 45 days before she contacted an EEO counselor. Compl. ¶ 34. It is the main subject of her formal

7

complaint and the agency accepted the claim for investigation. Opp., Ex. 1 at 5; Mot. to Dismiss, Ex. D at 3. Neither party disputes that this claim was properly exhausted. Thus, it may proceed.

      6. <u>Discriminatory Pay</u>

In her present complaint, Wilson alleges that she was paid less than similarly situated white and male employees "over many years." Compl. ¶¶ 36, 42, 48, 53. This claim is based on two purported salary differences: (1) Wilson's salary compared with white and male SK-17s when she was working at OIG; and (2) Sharek's higher OIG salary after Wilson had been transferred to OHR.

Like her other claims from her tenure at OIG, Wilson's first salary-based claim is time barred. Although each paycheck that results from a discriminatory compensation decision "triggers a new filing period," <u>Hammel v. Marsh USA Inc.</u>, 206 F. Supp. 3d 219, 231 (D.D.C. 2016), Wilson had ceased working at OIG about a year before she made her second informal complaint, and both her position and title had changed.[3] Compl. ¶¶ 34-35. Therefore, any paycheck resulting from a "discriminatory compensation decision" regarding Wilson's OIG pay would have been issued more than 45 days before Wilson's second contact with an EEO counselor in December 2014. <u>Hammel</u>, 206 F. Supp at 230.

Wilson's second salary-based claim—that her OIG salary was below Sharek's—was properly exhausted. Wilson timely raised the salary discrepancy between herself and Sharek in an affidavit submitted during the administrative process. <u>See</u> Mot. to Dismiss, Ex. A at 7-8. Although she specifically raised the issue in connection with a claim under the Equal Pay Act—

---

[3] Wilson's discriminatory pay claim does not appear to implicate her current OHR salary, which was retroactively raised in February 2015 to the date of her permanent reassignment in November 2014. <u>See</u> Compl. ¶ 36.

8

which the agency properly rejected because the Equal Pay Act only addresses salary differentials between women and men—Wilson put the agency on adequate notice that she was challenging her pay as compared to a younger, white woman. That was sufficient to meet the exhaustion requirement. See Coleman v. Duke, 867 F.3d 204, 210 (D.C. Cir. 2017) (finding that plaintiff had exhausted his timely retaliation claim even though the agency did not officially accept the claim for investigation or discuss it on the merits because the agency had notice of the claim). Therefore, Wilson's claim that Sharek was paid more than her while working in a similar position at OIG may proceed as a basis for the age and race discrimination claims set forth in the complaint.

### B. Hostile Work Environment

Wilson attempts to salvage her time-barred claims by arguing that they all form part of a distinct continuing hostile work environment claim. Opp. at 2. Hostile work environment claims allege a pattern of repeated discriminatory conduct that constitutes one single "unlawful employment practice." Morgan, 536 U.S. at 122. In determining whether a series of acts constitutes a hostile work environment claim, courts consider whether the acts "involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." Id. at 120. Where a series of alleged acts comprise a hostile work environment claim, that claim is not time barred "as long one act falls within" the statutory filing period. Id. at 122.

Despite this more lenient standard, Wilson still did not exhaust her hostile work environment claim. Wilson included a hostile work environment claim in her November 2013 informal complaint to an agency EEO counselor, but she failed to pursue it by filing a formal agency complaint. Mot. to Dismiss, Ex. E at 2. Therefore, the only way Wilson could have

9

exhausted a hostile work environment claim is if she made her *second* informal EEO complaint within 45 days of an incident that constitutes part of the claim. See Morgan, 536 U.S. at 122. But by the time Wilson reinitiated the informal EEO process in December 2014, she had already been working at OHR for almost a year under a different supervisor. See Compl. ¶ 29. And the only incident that occurred within 45 days of the second EEO contact—the permanent reassignment to OHR—is not so "similar in nature" to Wilson's harassment allegations from her time at OIG that together they form a single hostile work environment claim. Baird v. Gotbaum, 662 F.3d 1246, 1251 (D.C. Cir. 2011).

**C. "Reasonably Related" Exception**

Finally, Wilson argues that her time-barred claims should proceed because they fall under the "reasonably related" exception to the agency exhaustion requirement, which allows a court to hear claims that are "like or reasonably related to" claims that were timely exhausted. See Pierson v. Wash. Metro Area Transit Auth., 821 F. Supp. 2d 360, 364 (D.D.C. 2011). While the D.C. Circuit has questioned whether this exception still exists, see Mount v. Johnson, 664 F. App'x 11 (D.C. Cir. 2016), that is irrelevant here: the exception only applies to claims of discrimination or retaliation that occur *after* the filing of an administrative complaint. See Mount v. Johnson, 36 F. Supp. 3d 74, 84 (D.D.C. 2014). Because all of Wilson's time-barred claims arose *before* her second contact with an EEO counselor in December 2014, this exception cannot apply.[4]

---

[4] For the sake of clarity, the Court notes that just because an unexhausted allegation cannot form the basis of a Title VII or ADEA claim does not mean that the events giving rise to the allegation cannot be considered as *evidence* of a different claim that was administratively exhausted. In other words, at the summary judgment stage or at trial, Ms. Wilson can proffer evidence related to her time-barred claims as support for her exhausted claims so long as that evidence is both admissible and relevant to the exhausted claims.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [11] Defendant's Motion to Dismiss in Part is GRANTED in part and DENIED in part.

**SO ORDERED**.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: September 28, 2017